UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH ANDRE CURTIS,

          Plaintiff,

v.                                           Case No. 21-cv-1426-bhl

KILOLO KIJAKAZI,
Acting Commissioner for
Social Security Administration,

          Defendant.

## DECISION AND ORDER

Plaintiff Kenneth Andre Curtis challenges the denial of his 2016 applications for Social Security Disability Insurance (SSDI) benefits. While the appeal was pending, the Seventh Circuit decided the substantially similar case, *Ruenger v. Kijakazi*, 23 F.4th 760 (7th Cir. 2022). In *Ruenger*, the Court of Appeals reversed a decision of the Acting Commissioner of the Social Security Administration because the vocational expert (the same one who appeared in this case) gave convoluted testimony (virtually indistinguishable from the testimony of record here) that failed to establish the reliability of her job number estimates. While the Acting Commissioner is obviously aware of *Ruenger* (indeed she cites it twice in her response brief), she repeats the same arguments here that the Seventh Circuit rejected in that case. Accordingly, this Court has little choice but to reverse and remand. Because the vocational expert's testimony in this case, as in *Ruenger*, did not provide substantial evidence to support the Acting Commissioner's decision, the ALJ's decision will be reversed and remanded for further proceedings consistent with this Order.

## PROCEDURAL BACKGROUND

Plaintiff Kenneth Andre Curtis filed for Social Security Disability Insurance (SSDI) on January 22, 2016 and June 16, 2016. (ECF No. 19 at 1.) His applications were denied, initially and on reconsideration, so he sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on September 20, 2018, and a little over three months later, the ALJ issued a partially favorable decision, which found Curtis disabled as of March 14, 2018, but not disabled

during the roughly three years between that date and his alleged disability onset date of May 6, 2015. (*Id.* at 1-2.) Curtis appealed the decision, and this Court remanded with instructions to reconsider whether Curtis was disabled at any point from May 6, 2015 to March 13, 2018. (*Id.*) On September 22, 2021, after a second hearing, the ALJ again found Curtis not disabled during the relevant period. (*Id.* at 2.) This action followed. (*Id.*)

## FACTUAL BACKGROUND

At the 2021 hearing, the ALJ found that, from May 6, 2015 through March 13, 2018, Curtis had the following severe impairments: cervical spine degenerative disc disease, status post fusion; lumbar spine degenerative disc disease; bilateral shoulder impingement; diabetes mellitus; obesity; mood disorder; anxiety disorder; and schizoaffective disorder. (ECF No. 12-11 at 8.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Curtis argues reversal and remand is required because the vocational expert (VE) provided unreliable testimony and, therefore, did not supply substantial evidence in support of the ALJ's unfavorable decision. Because Seventh Circuit law confirms that the ALJ did not establish that

the VE's job number estimates were the product of a reliable method, the Acting Commissioner's decision will be reversed.

**I.     The ALJ Failed to Ensure the VE's Job-Number Estimates Were the Product of a Reliable Method.**

When a claimant's severe impairments do not presumptively establish a disability but nevertheless preclude the claimant from performing past relevant work, an ALJ turns to a VE to determine whether there exists in the national economy a significant number of jobs that the claimant can perform. 20 C.F.R. §404.1512. The VE is not required to perform a literal headcount of jobs in existence; she must only advance a reasonable approximation. *See Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). That said, when a claimant calls into question the reliability of the VE's conclusions, an ALJ "must require the VE to offer a reasoned and principled explanation" in support. *Id.* at 970. In other words, "the substantial evidence standard requires the ALJ to ensure that the [VE's] approximation is the product of a reliable method." *Id.* at 968. And this bar is cleared when the methodology "is based on 'well-accepted' sources and the [VE] explains her methodology 'cogently and thoroughly.'" *Ruenger*, 23 F.4th at 763 (quoting *Biestek*, 139 S. Ct. at 1155).

In this case, the ALJ determined that while Curtis was not presumptively disabled from May 6, 2015 to March 13, 2018, he could not perform any of his past relevant work. The ALJ therefore sought a VE's appraisal of what jobs, if any, Curtis could work based on his assessed residual functional capacity (RFC). (ECF No. 12-11 at 59.) After considering hypotheticals that incorporated Curtis' RFC, the VE identified a number of jobs—like addresser, final assembler, and packager—that Curtis could perform and that existed in significant numbers in the national economy. (*Id.* at 60.) Based on this, the ALJ found Curtis "not disabled." (*Id.* at 27.) The problem, as Curtis highlights and the *Ruenger* Court explained, is that the VE did not set forth an understandable methodology, nor did she justify her use of the so-called "equal distribution method." *See Ruenger*, 23 F.4th at 763-64.

The Seventh Circuit has repeatedly lamented several bureaucratic absurdities involved in job number estimation, which make the already-difficult process needlessly byzantine. *See e.g., Chavez*, 895 F.3d at 965-66. First, the Dictionary of Occupational Titles (DOT), which the VE in this case canvassed for suitable jobs, has not been updated in 30 years, so many of its listed "jobs have changed[,] and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). In addition, the DOT only defines jobs; it does not approximate their numbers. *Id.* Because

of this, VEs turn to Department of Labor statistics for job-number estimates. *See Ruenger*, 23 F.4th at 762. But the Department of Labor defines jobs not according to the DOT but the Standard Occupational Classification (SOC) codes. *Id.* And most SOC codes comprise multiple DOT jobs. *Id.* "This creates a matching problem: vocational experts can identify the number of jobs in the larger SOC grouping but cannot identify how those jobs are distributed among individual DOT job titles within that grouping." *Id.* To remedy this, VEs often turn to Occupational Employment Quarterly (OEQ). *Id.* OEQ helpfully estimates the number of jobs available in the national economy for each DOT job title. *Id.* Unfortunately, it does so using the logically dubitable "equal distribution method." *Id.* This involves dividing the number of jobs estimated for any given SOC code by the number of DOT job titles that code encompasses to determine how many jobs are available for each DOT title. *Id.* The Seventh Circuit has made sport out of questioning this method's accuracy, *see, e.g., Alaura v. Colvin*, 797 F.3d 503, 507-08 (7th Cir. 2015); *Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015); *Browning*, 766 F.3d at 709, because it assumes that, if Blockbuster employee and librarian fall within the same SOC code, they must exist in equal numbers in the national economy. Nevertheless, even job-number estimates based on equal distribution constitute substantial evidence if the VE justifies her use of the method. *See Ruenger*, 23 F.4th at 764.

The job-number estimates in this case do not establish substantial evidence in support of the Acting Commissioner's decision for two reasons. First, on the record as it exists, it is impossible to discern the VE's methodology. Second, to the extent the VE used the equal distribution method, she did not explain why she trusted it under the circumstances.

When asked to explain her methodology, the VE testified:

> I generally look up the names of the job, look at [OEQ] for their numbers. . . . And then look at the Department of Labor [W]age and [E]arning statistics for their numbers for the same job. If they match, I would use them as an – well, by match or within 100. I use them as examples. If not, I don't use them. If I do use them, then I go back and look up the group that's listed or the fee that's listed under the [OEQ], and then go to the DOT for examples of those occupations.

(ECF No. 12-11 at 62.) And just as she did in *Ruenger*, the VE stated that "she did not use [Standard Occupational Classification] (SOC) codes but instead added estimates for 'names of jobs' within industries listed in the Occupational Employment Survey." *Ruenger*, 23 F.4th at 763; (*see* ECF No. 12-11 at 62-63.) "Yet the Occupational Employment Survey furnishes job estimates

only by SOC codes." *Ruenger*, 23 F.4th at 763. So it remains unclear how the VE relied on wage and earning statistics grouped according to SOC codes without "using" those codes. The VE also testified that, in translating jobs from SOC codes to the DOT, she did not use SkillTran or JobBrowser. (ECF No. 12-11 at 63.) But minutes later, she admitted that the "final assembler" job she proposed "does come from JobBrowser Pro." (*Id.* at 65.) This confusing effort at explanation makes meaningful review nearly impossible. Like the Court in *Ruenger*, despite multiple passes at the transcript, this Court "cannot discern the VE's methodology." *Id.* at 765 (Scudder, J., concurring). "Without this fundamental information, the [VE's] testimony could not have provided the ALJ with sufficient confidence that her methodology was reliable." *Id.* at 763.

The Acting Commissioner argues that the VE's forty years' experience excuses her problematic methodology. (ECF No. 28 at 5-7.) She insists that there is no perfect formula, no unassailable system from which job-number estimates derive. *See Scanlan v. Kijakazi*, No. 20-cv-1117, 2022 WL 561900, at *8 (E.D. Wis. Feb. 24, 2022) ("[I]f some mathematical formula existed, a machine could simply perform the calculation. Clearly some benefit comes from having a person with relevant experience testifying at these hearings."). But there is a difference between slightly imperfect and impossible to follow, and a VE's method must fall closer to the former than the latter. Here, the method used is not understandable, and no amount of relevant work history can excuse that. *See Ruenger*, 23 F.4th at 764 ("[T]he issue in this case is . . . that the expert['s] . . . testimony contained inconsistencies and lacked the clarity needed for the ALJ to have confidence in her estimates.").

Further, even if the VE's method were clear, her testimony would not amount to substantial evidence in support of the ALJ's decision because she failed to justify her use of the equal distribution method. The Acting Commissioner argues that "[d]espite Plaintiff's attempts to handcuff [the VE] to the *OEQ* and the 'equal distribution method,' she never admitted to using such a method." (ECF No. 28 at 10.) She may not have admitted it, but "she relied on the method because she kept her own estimates only when they were consistent with the [OEQ], a publication that uses the method to calculate its estimates." *Ruenger*, 23 F.4th at 764. And she did not defend this choice. In fact, when asked why she believed her method was reliable, she said: "There are[n't] really a lot of other options." (ECF No. 12-11 at 63.) That speaks to the dearth of choices available, not the trustworthiness of the one made. Thus, like the expert in *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020), the VE "here 'never claimed that [her] method for estimating job numbers

[was] a well-accepted one, much less explained why that [was] so.'" *Ruenger*, 23 F.4th at 764 (quoting *Brace*, 970 F.3d at 822). "Nor did she testify about why her estimates should come within 100 jobs of the estimates in the [OEQ]." *Id.* "After all, her estimates accounted for [Curtis'] limitations, many of which are not accounted for by the [OEQ]." *Id.* In short, the VE repeated the same mistakes she made in *Ruenger*, and the ALJ in this case took no additional steps to clarify the muddled testimony. As a result, the Acting Commissioner's decision is not supported by substantial evidence and must be reversed and remanded.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Acting Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceeding consistent with this decision pursuant to 42 U.S.C. §405(g), sentence four.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 11, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge